IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Lamont Cutner,<br><br>Plaintiff;<br><br>vs.<br><br>Lt. David Burzinski, Lt. Eugene Hagood, and Tamirsha Strong,<br><br>Defendants. | C/A No. 6:25-cv-06459-RMG-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the motion for summary judgment of the defendants Lt. David Burzinski, Lt. Eugene Hagood, and Tamirsha Strong (doc. 63). The plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, brought this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. Pursuant to the provisions of 28 U.S.C. § 636(b), and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and submit findings and recommendations to the district judge.

## I. BACKGROUND

The plaintiff's complaint was entered on the docket on June 30, 2025 (doc. 1). After initial review of the plaintiff's complaint, the undersigned issued an order authorizing service of the plaintiff's § 1983 excessive force claim against defendants Lt. Burzinski, Lt. Hagood, and Ms. Strong, and a report and recommendation recommending that the plaintiff's remaining claims and defendants be dismissed (docs. 24, 27). The Honorable Richard M. Gergel, United States District Judge, adopted the report and recommendation on November 6, 2025, leaving only the plaintiff's § 1983 claim for excessive force pending in this action (doc. 31).

The plaintiff is currently an inmate at Broad River Correctional Institution in the South Carolina Department of Corrections ("SCDC") (Incarcerated Inmate Search, https://public.doc.state.sc.us/scdc-public/ (enter Cutner, Lamont) (last visited July 27, 2026)). At the time of the incident giving rise to the plaintiff's lawsuit, he was incarcerated at the SCDC's Perry Correctional Institution ("Perry") (*id.*).

The plaintiff alleges that the defendants violated his Eighth Amendment rights under the United States Constitution (doc. 1 at 8). The plaintiff contends that when he was taken back to his cell from a disciplinary hearing by Lt. Burzinski and Lt. Hagood, Lt. Burzinski slammed him into the wall and threatened to hurt him (*id*. at 6). He claims that, after being taken into the cell, Lt. Burzinski slammed the plaintiff into the wall again and punched him (*id*.). Lt. Hagood was allegedly "pushing" and "assaulting" the plaintiff during the same time (*id*.). The plaintiff states that he was "in full restraints and leg irons" during the assault (*id.*). The plaintiff contends that Ms. Strong was a bystander because he was under her supervision as her mental health patient, she saw the other defendants hit him, and she saw and did not prevent the excessive force used against him (*id*. at 6–7). The plaintiff's alleged injuries are "wrist and arm swelling" as well as emotional distress and depression (*id*. at 8, 9). For relief, the plaintiff seeks money damages (*id*.).

On April 10, 2026, the defendants filed their motion for summary judgment now before the court for consideration (doc. 63). That same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately to the defendants' motion (doc. 64). On April 27, 2026, the plaintiff filed a response to the motion for summary judgment (doc. 67), and the defendants filed a reply on April 29, 2026 (doc. 68). The plaintiff filed a sur-reply – without the court's permission – on May 20, 2026 (doc. 70). Accordingly, the motion for summary judgment is ripe for review.

## II. FACTS PRESENTED

As noted above, only the plaintiff's § 1983 claim for excessive force remains for consideration (*see* docs. 27, 31). The parties agree that there was an incident on April 22, 2025 (doc. 63-2 at 5; doc. 67 at 1). According to the incident reports, the plaintiff attended a disciplinary hearing on this date and became loud and aggressive toward the hearing officer (doc. 63-2 at 5–6). The hearing officer ordered the corrections officers to remove the plaintiff from the hearing, and the plaintiff jumped up from his chair and leaned aggressively toward the hearing officer (*id.*). Lt. Burzinski tightened the retrieval chain and placed the plaintiff back in his chair (*id.*). Lts. Burzinski and Hagood removed the plaintiff from his chair to return him to his cell, but the plaintiff resisted the escort and yelled expletives at the hearing officer (*id.*). During the escort, the plaintiff was in handcuffs and leg irons (doc. 63-3 at 6). Once at his cell, the plaintiff attempted to grab Lt. Burzinski's belt, and Lts. Burzinski and Hagood pushed the plaintiff against the cell wall until another corrections officer arrived to help them secure the plaintiff in his cell (doc. 63-2 at 5–7).

At the time of this incident, defendant Strong was the mental health officer assigned to the plaintiff's unit (doc. 63-3 at 6). Defendant Strong stated in her response to the plaintiff's interrogatories that she did not see Lt. Burzinski push the plaintiff against a wall "but did see the plaintiff refusing several directives" (*id.* at 7).

The defendants submitted the plaintiff's medical records with their motion, which show that after the incident, the plaintiff received medical treatment at his cell door and complained of pain to both of his wrists and his right ankle (doc. 63-4 at 21). There were marks around the plaintiff's wrists and right ankle from the restraints (*id.*). He also had a "[s]mall amount of swelling" on the top of his right arm (*id.*). The plaintiff stated that he had a new scar on his left arm, but the nurse believed it was an old scar (*id.*).

On May 13, 2025, the plaintiff complained of pain in both wrists from the April 22, 2025 incident, and during a sick call examination, he had a raised, one-half inch round

area on his left arm (*id.* at 13). The raised area on his left arm had no warmth or pain upon touch (*id.*). On June 24, 2025, his treatment records state there was a small round area that had no discoloration or warmth and was about the size of a cranberry (*id.* at 10). A June 30, 2025 x-ray of his "left wrist knot" showed "[m]ild degenerative changes" (*id.* at 15). On July 1, 2025, a doctor diagnosed the plaintiff with bursitis in his left elbow (*id.* at 5).

## III. APPLICABLE LAW AND ANALYSIS

### *A. Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise,

conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

***B. Excessive Force***

Lts. Burzinski and Hagood argue that they did not violate the plaintiff's constitutional rights because they pushed the plaintiff against a wall in good faith to restore order and this was a de minimus use of force (doc. 63-1 at 9–10). They also contend that the plaintiff's alleged injuries were de minimis or lack a causal link to this incident (doc. 68 at 3–4). The plaintiff claims that he "was assaulted and slammed up against [a wall] injuring [his] elbow" and "was punched in the back in restraints" (doc. 67 at 1–2). He also argues that his lack of disciplinary charge and conviction for this incident shows that the defendants lied in their incident reports and answers to interrogatories (*id.* at 3–5; doc. 70 at 1).

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To recover on an Eighth Amendment excessive force claim, a plaintiff must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (citing *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). Thus, courts must analyze both subjective and objective components. To establish the objective component, a plaintiff must show "that the alleged wrongdoing is objectively 'harmful enough' to establish a constitutional violation" in the context of "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson v. Seiter*, 501 U.S. 294, 303 (1991)). When prison officials maliciously and sadistically use force to cause harm, there is a constitutional violation regardless of how significant the injury may be. *Id.* at 9; *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

The United States Court of Appeals for the Fourth Circuit has identified the following four factors to consider when analyzing the subjective component of an excessive force claim:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response.

*Escobar-Salmeron v. Moyer*, 150 F.4th 360, 372 (4th Cir. 2025) (quoting *Iko*, 535 F.3d at 239); s*ee also Whitley Albers*, 475 U.S. 312, 321 (1986). "[T]he 'core judicial inquiry' regarding the subjective component of an excessive force claim is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Parker v. Stevenson*, 625 F. App'x. 196, 198 (4th Cir. 2015) (quoting *Iko*, 535 F.3d at 239). However, officers cross the line into an impermissible motive if "they inflict pain not to protect safety or prison discipline but to punish or retaliate against an inmate for his prior conduct.'" *Dean v. Jones*, 984 F.3d 295, 302 (4th Cir. 2021). An officer's "use of force on an inmate who is 'restrained and compliant and posing no physical threat' raises the specter of such an impermissible motive." *Id.* (quoting *Thompson v. Virginia*, 878 F.3d 89, 102 (4th Cir. 2017)).

Although serious injury is not required, the extent of injuries may "provide some indication of the amount of force applied" because "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id*. "An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.*

For purposes of this motion, the undersigned will assume that the plaintiff's claim can satisfy the objective component of an excessive force cause of action and will focus on the subjective component. Under the first factor of the subjective component, the need for the application of force, the record establishes the need to restrain the plaintiff. In their incident reports, Lts. Burzinski and Hagood stated that they removed the plaintiff from his disciplinary hearing after he was unruly and aggressive, and the plaintiff continued this pattern of behavior when he reached for Lt. Burzinski's belt while the officers escorted the plaintiff to his cell (doc. 63-2 at 5–6). A third officer, who responded to the call for help, reported that the plaintiff "was actively pushing against staff, yelling, and screaming" when the officer arrived (*id.* at 7). The officers needed to use an appropriate level of force to further restrain the plaintiff by pushing him against the wall until additional officers arrived (*id.*). While the plaintiff told his mental health professional that he was "fully restrained" and "not a threat" (doc. 63-4 at 18),[1] he provides no evidence that he was compliant. Nor does he dispute the defendants' account that he was aggressive at his hearing and tried to grab Lt. Burzinski during the escort. He produced no evidence in support of his claim that any defendant punched him or used any force other than pushing him against a wall. Accordingly, this factor weighs in favor of Lts. Burzinski and Hagood.

The second factor, the relationship between the need and amount of force used, also weighs in favor of Lts. Burzinski and Hagood. The plaintiff baldly claims that Lts. Burzinski and Hagood "assaulted" him (doc. 63-4 at 18). However, Lts. Burzinski and Hagood state in their incident reports that they held the plaintiff against his cell wall while they waited for additional officers to help them (doc. 63-2 at 5–6). According to the medical records from the day of the incident giving rise to the complaint, the only marks on the

[1] The only evidence the plaintiff provides in support of his response to the defendants' motion are documents already filed by the defendants and some additional medical records (*see* doc. 70-1).

plaintiff were from the restraints and a scar on his left arm that "looked old" (doc. 63-4 at 21). There was also a "small amount of swelling" on the plaintiff's right forearm (*id.*). His records from follow-up appointments show that he reported "soreness" in his wrists and his new complaint about a half-inch raised circle on his left elbow that had no warmth or pain upon touch (*id.* at 10, 13). There is no evidence that the scar on his left arm or the small raised circle on his left elbow were from this incident. Even if they were, the record shows the officers used limited force, and the plaintiff's injuries were de minimis.[2]

The third factor, the extent of any reasonably perceived threat, weighs in favor of Lts. Burzinski and Hagood. The plaintiff was unruly and aggressive at his hearing, and he also resisted the officers during the escort to his cell (doc. 63-2 at 5–7). The record establishes a sound basis for Lts. Burzinski and Hagood to hold the plaintiff against a wall until additional officers arrived.

The fourth factor, any efforts to temper the severity of the response, was satisfied by the evidence that Lts. Burzinski and Hagood attempted to de-escalate the situation by taking the plaintiff back to his cell. Only after the plaintiff continued his aggression did they hold the plaintiff against a wall until other officers could arrive to help get the plaintiff into his cell (doc. 63-2 at 5–7). Also, Ms. Strong stated that she saw the plaintiff "refusing several directives" (doc. 63-3 at 7).

Viewing the evidence in a light most favorable to the plaintiff as the nonmoving party and applying the appropriate factors, the undersigned finds that the force utilized by Lts. Burzinski and Hagood was applied in good faith and was reasonably necessary to restore order and institutional control. The plaintiff's actions were plainly calculated to provoke a response from prison staff that would require the use of force. Permitting the

---

[2] As to the plaintiff's claims for "emotional distress along with depression" (doc. 1 at 8), the Fourth Circuit has held that "de minimis physical injuries cannot support a claim for mental or emotional injury." *Perkins v. Dewberry*, 139 F. App'x 599, *1 (4th Cir. 2005).

plaintiff to continue to engage in this behavior would invite inmates to engage in disruptive conduct with the purpose of manufacturing a lawsuit and would undermine the ability of prison officials to maintain institutional order. *See Cutner v. Canning*, C.A. No. 6:23-cv-2534-RMG, 2024 WL 3949414, at *5 (D.S.C. Aug. 27, 2024). Under these circumstances, the undersigned finds that no reasonable jury could find the use of force was applied by Lts. Burzinski and Hagood maliciously and sadistically for the very purpose of causing harm. Accordingly, the undersigned recommends that the district judge grant the motion for summary judgment of Lts. Burzinski and Hagood.

***C. Bystander Liability***

The plaintiff also asserts a bystander liability claim against Ms. Strong because he was her patient and she saw the other defendants using excessive force against the plaintiff (doc. 1 at 6–7). The defendants argue that Ms. Strong cannot be liable under bystander liability because the evidence shows that she was not present during the other defendants' use of force (doc. 63-1 at 7).

Courts have generally "concluded that an officer possesses 'an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers.'" *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 203–04 (4th Cir. 2002) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). Such duty attaches under § 1983 when the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* at 204.

Here, there is no mention of Ms. Strong in any of the incident reports (doc. 63-2 at 5–8). Ms. Strong stated that she did not see Lt. Burzinski push the plaintiff against the wall, but she "did see the plaintiff refusing several directives" (63-3 at 7). There is no testimony or other evidence showing that the plaintiff's constitutional rights were violated, that Ms. Strong saw or otherwise knew of same, or that she had a reasonable opportunity

to prevent the harm to the plaintiff and chose not to act. Without more, the plaintiff cannot survive the defendants' motion for summary judgment with his self-serving and unsupported allegations. *See Matherly v. Andrews*, 859 F.3d 264, 280 (4th Cir. 2017) ("Conclusory or speculative allegations do not suffice to oppose a properly supported motion for summary judgment, nor does a mere scintilla of evidence.") (citations and internal quotation marks omitted). Accordingly, the undersigned recommends that the motion for summary judgment be granted as to the bystander liability claim against Ms. Strong.

***D. Qualified Immunity***

The defendants argue that they are entitled to summary judgment on the plaintiff's claims against them in their individual capacities based on qualified immunity (doc. 63-1 at 11–12). Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, a district court must decide (1) whether any right was violated, and (2) whether that right was "clearly established" at the time of the alleged violation. *Somers v. Devine*, 132 F.4th 689, 696 (4th Cir. 2025). "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Fourth Circuit employs a split burden of proof for the qualified immunity defense. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022). "The plaintiff bears the burden on the first prong, and the officer bears the burden on the second prong." *Id.* (citing *Henry v. Purnell*, 501 F.3d 374, 377–78 & n.4 (4th Cir. 2007)). "If the answer to *either* is 'no,' qualified immunity bars the claim." *Gelin v. Maryland*, 132 F.4th 700, 713 (4th Cir. 2025) (emphasis added).

Here, as discussed above, the plaintiff has not demonstrated that any of the defendants violated his constitutional rights. Thus, the defendants are entitled to qualified immunity on the plaintiff's claims.

### *E. Eleventh Amendment Immunity*

The defendants further argue that they are entitled to summary judgment on the plaintiff's claims against them in their official capacities based on Eleventh Amendment immunity (doc. 63-1 at 10–11). The Eleventh Amendment provides: "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. The Eleventh Amendment also precludes suits for money damages against an unconsenting state by one of its own citizens. *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity." *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted). "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and therefore "is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Here, there is no dispute that at the time of the incident in question, the defendants were SCDC employees. Accordingly, summary judgment should be entered for the defendants as to the plaintiff's claims against them in their official capacities.

## IV. CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the undersigned recommends that the district judge grant the defendants' motion for summary judgment (doc. 63).

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

July 30, 2026
Greenville, South Carolina

***The attention of the parties is directed to the important notice on the following page.***

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co*., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).